**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PITTSFIELD DEVELOPMENT, LLC, et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **No. 17-CV-1951** |
| | ) | **Honorable Charles P. Kocoras** |
| **CITY OF CHICAGO,** | ) | **Magistrate Judge Sidney I. Schenkier** |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**INTRODUCTION**

In their Complaint ("Compl."), Plaintiffs Pittsfield Development LLC ("Development") Pittsfield Hotel Holdings, LLC ("Hotel"), and Plaintiff Pittsfield Residential II, LLC ("Residential") (collectively, "Plaintiffs") challenge an ordinance enacted by the Chicago City Council on March 16, 2016, amending the zoning for the Pittsfield Building located at 55 E. Washington Street, Chicago, Illinois (the "Building"). On July 12, 2000, Development purchased the Building, which at the time was zoned DX-16 (Downtown Mixed Used District), and thereafter divided the Building into four separately deeded subdivisions. Compl. ¶¶ 11-12, 18. The subdivision owned by Development includes all basement levels, the ground floor, a portion of floor 22, and floors 23-40. *Id.* ¶¶ 11, 13. Hotel, which Development formed for the purpose of establishing and operating a hotel in the Building, owns floors 2-9, and Residential owns floors 10-12. *Id.* ¶¶ 14-15. An unrelated entity, 55 E. Washington Development, LLC, owns floors 13-21, which are leased to colleges for student housing. *Id.* ¶ 17.

Based on the Building's DX-16 zoning classification, Plaintiffs intended to establish a hotel on floors 2-9 and develop residential units on floors 23-40. *Id.* ¶ 20. Plaintiffs allege that

in reliance on the DX-16 zoning, as well as a letter from Assistant Zoning Administrator Steven Valenziano confirming that a hotel use was permitted in the Building under the DX-16 zoning, they removed "most" of their tenants from all but floors 10-12 of their space in the Building, *id.* ¶¶ 23, 25, and obtained a permit from the City on December 10, 2015, to convert floors 2-9 into a hotel with up to 191 rooms, *id.* ¶ 28. On February 10, 2016, Alderman Brendan Reilly, in whose ward the Building is located, introduced an ordinance to change the zoning for the Building from DX-16 to DR-10 (Downtown Residential Use District) (the "Amendment"). *Id.* ¶ 32. The DR-10 classification allows for residential and other uses but does not permit a hotel use. *See* Municipal Code of Chicago ("MCC"), § 17-4-0207. On March 14, 2016, the City Council's Committee on Zoning, Landmarks, and Building Standards (the "Committee") held a public hearing on the Amendment and recommended approval to the full City Council, which voted to approve the Amendment on March 16, 2016. Compl. ¶¶ 35-36.

In Count I, Plaintiffs seek a declaratory judgment that the Amendment is unconstitutional because it violates: (i) the due process and equal protection clauses of the Fourteenth Amendment; (ii) the Fifth Amendment's Takings Clause; (iii) Illinois law and City ordinances requiring a quorum to be present for a Committee vote.[1] Counts II and III raise the same challenges but seek injunctive and monetary relief, respectively. In Count IV, Plaintiffs bring a claim for inverse condemnation, and Count V raises a promissory estoppel challenge to the Amendment. Finally, in Count VI, Plaintiffs seek damages against the City based on purported violations of the due process, equal protection, and takings clauses of the Illinois Constitution.

---

[1] Because Plaintiffs bring several distinct constitutional claims in Count I and likewise bring multiple state constitutional claims in Count VI, Plaintiffs' Complaint does not comply with Fed. R. Civ. P. 10(b), which provides: "A party must state its claims or defenses in numbered paragraphs, *each limited as far as practicable to a single set of circumstances*. A later pleading may refer by number to a paragraph in an earlier pleading. *If doing so would promote clarity, each claim founded on a separate transaction or occurrence -- and each defense other than a denial -- must be stated in a separate count or defense*." Fed. R. Civ. P. 10(b) (emphasis added). Failure to comply with Rule 10(b) can be grounds for dismissal. *See Frederiksen v. City of Lockport*, 384 F.3d 437 (7th Cir. 2004).

Plaintiffs fail to state a claim, however. First, they do not meet the Seventh Circuit's standards for bringing a federal substantive due process claim, but even if they do, the Amendment easily survives rational basis review. Second, both their federal and state procedural due process claims fail because the legislative process by which the Amendment was enacted provided Plaintiffs with all of the process that was due and, moreover, their own allegations demonstrate that they had actual notice of the Committee's hearing. Third, Plaintiffs do not state a claim that their equal protection rights have been violated because they do not meet the requirements for bringing a class of one claim. Fourth, Plaintiffs' federal and state takings claims, as well as their claim for inverse condemnation, fail because Plaintiffs do not properly plead that they have been denied all economic use of the Building. Fifth, Plaintiffs cannot state a promissory estoppel claim because the City did not make an unambiguous promise on which they could have reasonably relied. Sixth, Counts IV-V, which contain Plaintiffs' state law challenges to the Amendment, fail because the City is immune from damages, which is the only relief Plaintiffs seek therein. And finally, Plaintiffs' due process and equal protection claims in Count VI should also be dismissed because they were not filed within the appropriate statute of limitations. For these reasons, explained below, Plaintiffs fail to state a claim under any of their theories, and their Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

*Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are presumed true for purposes of a motion to dismiss, *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012), but conclusory allegations that merely recite the elements of a claim are not entitled to a presumption of truth, *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## ARGUMENT[2]

## I.    Plaintiffs Have Not Stated A Federal Substantive Due Process Claim (Count I).

Plaintiffs fail to state a violation of their federal substantive due process rights. The Supreme Court and the Seventh Circuit have repeatedly "emphasized how limited the scope of the substantive due process doctrine is." *Dunn v. Fairfield Community High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998); *see Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). For a plaintiff to prevail on substantive due process grounds, "[a] governmental entity must have exercised its power without reasonable justification in a manner that 'shocks the conscience,'" *Bettendorf v. St. Croix Cnty.*, 631 F.3d 421, 426 (7th Cir. 2011) (internal quotation and citation omitted). "Unless a government practice encroaches upon a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest or, alternately phrased, that the practice be neither arbitrary nor irrational." *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003). Substantive due process is not "a blanket protection against unjustifiable interferences with property." *Schroeder v. City of Chi.*, 927 F.2d 957, 961 (7th Cir. 1991). Rather, the Seventh Circuit has cautioned that "a plaintiff bears a very heavy burden in a substantive due process action attacking a decision of local zoning officials. And rightly so, for

---

[2] Because Plaintiffs bring multiple federal constitutional claims in Count I and the state law counterparts in Count VI, and the federal and state law on many of those claims mirror each other, the City has organized its memorandum by claim and not by count. Additionally, the City does not separately discuss Counts II and III, which seek injunctive relief and damages, respectively, because those counts seek only alternative relief based on the claims in Count I. Because Count I fails to state a claim, it follows that Counts II and III likewise should be dismissed.

the federal courts are not zoning boards of appeal and will not overturn merely erroneous decisions." *Polenz v. Parrot*, 883 F.2d 551, 558 (7th Cir. 1989). *See River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165 (7th Cir. 1994).

Where, like here, a substantive due process claim involves only the alleged deprivation of a property interest, *see* Compl. ¶ 34, a plaintiff must first show "'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in . . . deferential rational-basis review." *Lee*, 330 F.3d at 467 (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323-26 (7th Cir. 1996)). Plaintiffs cannot show either. First, Plaintiffs have state law remedies at their disposal. As Plaintiffs' pendant state-law claims under the Illinois Constitution demonstrate, Plaintiffs have recourse in state court. *See id.* (holding that plaintiff's pendant state-law claims asserted in the complaint demonstrate that state law provides adequate remedies). Second, although Plaintiffs have alleged violations of the Fifth Amendment and their Fourteenth Amendment procedural due process and equal protection rights, those claims fail and cannot therefore satisfy Plaintiffs' obligation to plead an "independent constitutional violation." *See infra* pp. 6-12. Plaintiffs' failure to meet this initial requirement mandates dismissal of their federal substantive due process claim.

But even if Plaintiffs could meet their preliminary burden, the Amendment easily satisfies constitutional scrutiny. Because it affects no fundamental right, it is subject to rational basis review. The federal standard is highly deferential; if there is any conceivable basis for a government's action, it is rational. *Pro-Eco, Inc. v. Board of Comm'rs of Jay Cnty.*, 57 F.3d 505, 514 (7th Cir. 1995). *See also Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388 (1926) ("If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control."). Rational basis review is not subject to courtroom fact finding or evidentiary proceedings. *E.g.*, *FCC v. Beach Communic'ns*, 508 U.S. 307, 315 (1993)

("[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."); *Nat'l Paint & Coatings Ass'n v. City of Chi.*, 45 F.3d 1124, 1127 (7th Cir. 1995) ("Outside the realm of 'heightened scrutiny' there is therefore never a role for evidentiary hearings."). Thus, the Court can determine the rationality of the Amendment on the City's motion to dismiss.

The Amendment easily satisfies the rational basis test because there are several conceivable bases supporting its enactment. For example, the City could have conceivably determined that a hotel use at that location in the Loop would increase traffic and disrupt bus stops and public parking. The City also could have determined that it wanted to encourage residential development, rather than additional businesses, in that area of the Loop. Because these are conceivable legitimate bases supporting the rationality of the Amendment, Plaintiffs fail to state a violation of their federal substantive due process rights.

## II. Plaintiffs Fail To Identify Any Procedural Due Process Violation (Counts I and VI).

Although Plaintiffs contend that their federal procedural due process rights were violated because they did not receive notice of the Committee's hearing, *see* Compl. ¶ 33, their claim fails under Seventh Circuit precedent. "When zoning decisions are confided to a legislative rather than a judicial body . . . the affected persons have no right to notice and an opportunity for hearing: no right, in other words, to procedural due process." *Indiana Land Co., LLC, v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004). *See also River Park*, 23 F.3d at 166 (rejecting procedural due process claim that the city council did not treat plaintiff's application for a zoning ordinance fairly); *Pro-Eco, Inc.*, 57 F.3d at 513 (local governments "may legislate[] without affording affected parties so much as a notice and an opportunity to be heard"). Here, the decision to enact the Zoning Ordinance rested squarely with the City Council. *See* MCC § 17-13-0307. As a result, the City Council's legislative process gave Plaintiffs all of the process that

was due under the Fourteenth Amendment. *See Civil Liberties for Urban Believers v. City of Chi.*, 342 F.3d 752, 767 (7th Cir. 2003).

Plaintiff's state procedural claim also fails.[3] In *Mullane v. Central Hanover Bank & Trust*, the U.S. Supreme Court set forth the standard for determining the sufficiency of notice:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, *to apprise interested parties of the pendency of the action* and *afford them an opportunity to present their objections*. The Notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested *to make their appearance*. . . . The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

339 U.S. 306, 314-15 (1950) (internal citations omitted and emphasis added). Notice is therefore sufficient if (1) the method of notice is "reasonably calculated" to reach the parties interested in the proposed action, and (2) the notice affords them an opportunity to make their appearance and present their objections. *See id.*; *Doherty*, 75 F.3d at 323 ("fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful way" but it "is a flexible concept that varies with the particular situation"). Illinois courts have adopted the *Mullane* standard. *See, e.g.*, *Stratton v. Wenona Comm. Unit Dist. No. 1*, 133 Ill. 2d 413, 432, 551 N.E.2d 640, 648 (1990).

At the outset, Plaintiffs do not allege that the City failed to send them notice; they claim only that they did not receive it. Moreover, Plaintiffs allege that, despite not receiving notice,

---

[3] For the Court's convenience, the City discusses Plaintiffs' state law claims along with their federal counterparts. Pursuant to 28 U.S.C. § 1367(c)(3), however, this court may decline supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction[.]" *See, e.g.*, *Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Because Plaintiffs cannot succeed on any of their federal claims, the Court should decline to exercise jurisdiction over Plaintiffs' state-law claims in Counts IV-VI. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Green Valley Invs v. Winnebago Cnty.*, 794 F.3d 864, 870-71 (7th Cir. 2015).

they nonetheless "discovered said proposal via a notice posted on a public light pole across from the Building." Compl. ¶ 33. Under Illinois law, defects in notice may not be raised by parties who have actual notice of the meeting or hearing. *See Armour v. Mueller*, 36 Ill. App. 3d 23, 28 (5th Dist. 1976). *See also Stroick v. Vill. of West Dundee*, 319 Ill. App. 3d 468, 475 (1st Dist. 2001); *Kleidon v. City of Hickory Hills*, 120 Ill. App. 3d 1043, 1048 (1st Dist. 1984). As Plaintiffs concede that they had actual notice of the Committee's meeting, their claim fails.[4]

### III. Plaintiffs Fail To State An Equal Protection Violation (Counts I & VI).

Plaintiffs additionally do not state a federal or Illinois equal protection claim.[5] "Typically, equal protection claims involve charges of singling out members of a vulnerable group for unequal treatment or charges that a law or policy makes irrational distinctions between groups of people." *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). The Supreme Court has recognized, however, that an individual may bring an equal protection claim under a "class of one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To prevail on a class of one claim, a plaintiff must prove that "(1) it has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward" the plaintiff.[6]

---

[4] Plaintiffs allege on information and belief that the Committee recommendation to approve the Amendment was invalid because the Committee lacked a quorum. *See* Compl. ¶ 35. Even accepting Plaintiffs' allegation as true, it does not invalidate the Amendment. Under long-standing Illinois law, a court cannot invalidate an ordinance enacted by a home rule unit of local government because the home rule unit failed to follow its own procedures in enacting the ordinance. *See Landmarks Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164, 179-80, 531 N.E.2d 9, 15-16 (1988). Because the City Council imposed the requirement that the Committee make a recommendation on all zoning map amendments, *see* MCC § 17-13-0306, any failure by the Committee to properly make that recommendation would not invalidate the City Council's ultimate approval of the Amendment.

[5] Claims under the equal protection clause of the Illinois Constitution are evaluated using the same analysis employed under the U.S. Constitution. *See Jarabe v. Industrial Comm'n*, 172 Ill. 2d 345, 348, 666 N.E.2d 1, 3 (1996).

[6] With respect to the second element of a class of one equal protection claim, the Seventh Circuit

*Maulding Dev., LLC v. City of Springfield*, 453 F.3d 967 (7th Cir. 2006) (citing *Vill. of Willowbrook*, 528 U.S. at 564). The Seventh Circuit has repeatedly characterized the burden of proof a plaintiff must satisfy in a class of one claim as "very significant," *Bell*, 367 F.3d at 708, and "difficult," *Woodruff v. Mason*, 542 F.3d 545, 554 (7th Cir. 2008). *See also McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). This is particularly true in a land use case. *See Maulding Dev.*, 453 F.3d at 970; *Bell*, 367 F.3d at 707-09 (individuals were not similarly situated to the plaintiff where the individuals submitted applications for pier extensions at different times, requested different extensions, or sought to replace old structures rather than construct new ones); *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (individuals were not similarly situated where individuals submitted different variances than the plaintiff requested, at different time periods, or had requests granted by different village boards).

Because Plaintiffs do not allege that they are members of a "vulnerable group" or that the Amendment makes an irrational distinction between groups of people, they have not stated a "traditional" equal protection claim. To the extent Plaintiffs attempt to bring a "class of one" equal protection claim, it fails. First, to meet the requirement that they are similarly situated to another, Plaintiffs must allege that they were "treated differently than someone who is *prima facie* identical in all relevant respects." *Purze*, 286 F.3d at 455. Plaintiffs' Complaint is devoid of any facts alleging that Plaintiffs have been treated differently from anyone, much less those whose building and development plans are *prima facie* identical to Plaintiffs' plans in all aspects.

---

has divergent precedent which has not yet been reconciled. *See Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc). The disagreement is "whether the plaintiff in a class-of-one claim must demonstrate only that there is no possible justification or rational basis for the defendant's actions . . . or if the plaintiff must demonstrate a lack of justification and also present evidence of hostile intent or animus . . . or if the plaintiff must demonstrate an absence of rational basis, which can be satisfied with evidence of animus." *Brunson v. Murray*, 843 F.3d 698, 706 (7th Cir. 2016) (internal citations omitted.) This Court need not address or resolve this question, however, because Plaintiffs fail to allege that the Amendment lacks a rational basis or that it resulted from any animus toward Plaintiffs.

Second, although Plaintiffs state that the Amendment lacks a rational basis, *see* Compl. ¶ 48, their allegation is conclusory and is therefore insufficient to support their equal protection claim. Moreover, as set forth above in Part I, *supra*, the Amendment is rational. Finally, Plaintiffs do not state that the cause of the alleged differential treatment is a 'totally illegitimate animus' toward" them. They state only that the City "acted with malice" in passing the Amendment, but, again, their bald allegation of "malice," without any supporting facts, is insufficient. See *Naguib v. Illinois Dep't of Prof'l Regulation*, 986 F. Supp. 1082, 1092 (N.D. Ill. 1997) ("[B]ald assertions of discriminatory animus behind conspirators' action unsupported by any meaningful, factual allegations is not enough to withstand a motion to dismiss.") (citation omitted). Plaintiffs' allegations fall far short of alleging a class of one claim.

## IV.   Plaintiffs Fail To State a Takings Claim Or A Claim For Inverse Condemnation (Counts I, IV & VI).

Plaintiffs fail to state a claim that the Amendment constitutes a taking of their interest in the Building without just compensation in violation of either the U.S. or Illinois Constitution. The Fifth Amendment provides that private property shall not "be taken for public use, without just compensation," U.S. Const., amend. V, and the Illinois Constitution similarly provides that "[p]rivate property shall not be taken or damaged for public use without just compensation," Ill. Const. 1970, art. I, § 15. The Supreme Court has recognized two broad categories of "takings": (1) a direct government appropriation or physical invasion of private property; and (2) a "regulatory taking," in which the government's "regulation of private property [is] so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). In *Lingle*, the Court recognized that a regulatory taking can occur when the "government requires an owner to suffer a permanent physical invasion of her property" or "deprives an owner of *all* economically beneficial use of her property." 544 U.S. at

10

538 (quotation marks and alterations omitted).[7]  *See Stahelin v. Forest Preserve Dist. of DuPage Cnty.*, 376 Ill. App. 3d 765, 771-72, 877 N.E. 2d 1121, 1127 (2d Dist. 2007).  If the government takes private property without initiating condemnation proceedings, an owner may institute an action for inverse condemnation, which is the process by "which a landowner recovers just compensation for a taking of its property."  *Tim Thompson, Inc. v. Vill. of Hinsdale*, 247 Ill. App. 3d 863, 884, 617 N.E.2d 1227, 1242 (2d Dist. 1993).

Here, Plaintiffs appear to bring a regulatory takings claim because they do not allege a physical taking of the Building but instead assert that the City, through the Amendment, has denied it "all viable economic uses of" its interest in the Building. Compl. ¶ 41.  But Plaintiffs' allegations are conclusory and do not demonstrate that the Amendment effects a taking.  Plaintiffs allege that the change in zoning from DX-16 to DR-10 was a "significant downgrade" because it allows for "significantly less residential units in the Building than already exist," meaning that no residential units in addition to those already in the Building can be developed. *Id.* ¶ 34.  Plaintiffs therefore claim that except for floors 10-12 and certain retail space on the ground floor (which are allegedly still occupied by tenants), their remaining floors in the Building must "sit empty."  *Id.*  Plaintiffs, however, provide no facts to support their conclusory assertion that no further residential development is possible in the Building.  Whether additional residential units can be located in the Building depends on a number of factors, including the overall square footage of the building and the type of units to be developed, *i.e.*, dwelling, efficiency, or single room occupancy.  *See* MCC § 17-4-040-A.  For example, the minimum size for an efficiency unit is 75 square feet, whereas a dwelling unit has a minimum size of 115

---

[7] In *Lingle*, the Court recognized two additional categories of regulatory takings: government exactions, and all "other" regulatory takings, which are evaluated under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978).  544 U.S. at 538, 546-47.  Because Plaintiffs' allegations do not suggest that the alleged taking falls under either category, the City does not address them herein.

square feet. Thus, residential development could be viable depending on the type of unit (or the combination of types) selected and the square footage of the Building. But Plaintiffs do not allege in their Complaint the square footage of the Building, from which it can be determined how many units are permissible in the Building, or how much of that is currently used for residential units, all of which is presumably within Plaintiffs' knowledge. Plaintiffs therefore have not pled any facts demonstrating that the Amendment bars further residential development in the Building.

Additionally, Plaintiffs' claim that they have been denied *all* viable economic uses of the Building is contradicted by the Chicago Zoning Ordinance. MCC § 17-4-0207 sets forth the permissible uses in a building zoned DR-10, and such uses as of right include residential units, assisted living facilities, domestic violence residences, colleges and universities, day care facilities, hospitals, schools, bed and breakfasts, and religious assemblies. *Id.* § 17-4-0207. Plaintiffs fail to acknowledge that they could use their property for any of these additional uses nor do they allege any facts demonstrating that these uses are not economically viable. Because the Chicago Zoning Ordinance provides several additional uses Plaintiffs could make of their Building under DR-10 zoning and Plaintiffs fail to address those additional uses, much less plead that they are not economically viable, Plaintiffs have not stated a takings claim under either the U.S. or Illinois Constitution or a claim for inverse condemnation.

**V.      Plaintiffs Fail To State A Claim For Promissory Estoppel (Count V).**

Plaintiffs do not state a claim in Count V that promissory estoppel bars the City's enactment of the Amendment. To state a claim for promissory estoppel, "the plaintiff must show that (1) an unambiguous promise was made; (2) the plaintiff relied on the promise; (3) the plaintiff's reliance on the promise was reasonable; and (4) the plaintiff suffered a detriment." *Chicago Limousine Serv., Inc., v. City of Chi.*, 335 Ill. App. 3d 489, 499, 781 N.E.2d 421, 429

(1st Dist. 2002). Promissory estoppel "'against public bodies is generally not favored and is allowed in only rare and unusual circumstances,'" such as "'prevent[ing] fraud and injustice.'" *Id.* (quoting *Halleck v. Cnty. of Cook*, 264 Ill. App. 3d 887, 893, 637 N.E.2d 1110, 1114 (1st Dist. 1994)). The affirmative act that prompts the party's reliance must be "an act of the public body itself such as a legislative enactment rather than the unauthorized acts of a ministerial officer or a ministerial misinterpretation." *Schivarelli v. Chi. Transit Auth.*, 355 Ill. App. 3d 93, 103, 823 N.E.2d 158, 167 (1st Dist. 2005).

Plaintiffs assert that the letter sent by Assistant Zoning Administrator Steven Valenziano on May 1, 2014, constitutes an unambiguous promise by the City that they can construct a hotel in the Building and that they changed their position in reliance on that promise to their detriment. *See* Compl. ¶¶ 103-04. They are wrong. First, the letter is not a legislative enactment or a directive from the City Council and therefore is not an unambiguous promise from the City. *See Schivarelli*, 355 Ill. App. 3d at 103, 823 N.E.2d at 167. Second, the letter, by its plain language, does not unambiguously promise Plaintiffs that they have the right to locate a hotel in the Building in perpetuity. The letter states that the Building "is *currently* zoned DX-16 [and that] [p]ursuant to section 17-04-0207-ll of the Chicago Zoning Ordinance a hotel is a permitted use . . . and therefore would be allowed to establish by-right" in the Building. *Id.* Ex. A (emphasis added). Thus, the letter clearly states only that under the then-existing zoning, a hotel use would be allowed. Nothing in the letter promises Plaintiffs that the zoning would never change and that a hotel would always be allowed. Finally, Plaintiffs' purported reliance on the letter is not reasonable not only for the foregoing reasons but also because under long-standing Illinois law, property owners do not enjoy the right to the continuation of any particular zoning classification. *1350 Lake Shore Assocs. v. Randall*, 401 Ill. App. 3d 96, 102, 928 N.E.2d 181, 187 (1st Dist. 2010) ("A municipality has the right to amend its zoning ordinances . . . and one who purchases

land is charged with the understanding that its zoning classification may be changed in the future.") (citations omitted). Plaintiffs' promissory estoppel claim fails as a matter of law, and Count V should therefore be dismissed.

## VI. Counts IV-VI Fail Because Plaintiffs Cannot Obtain Damages Under Illinois Law.

Plaintiffs' state-law claims in Counts IV-VI should also be dismissed because the Court cannot award the relief Plaintiffs seek. Plaintiffs bring an inverse condemnation claim in Count IV, contend in Count VI that the Amendment violates their rights under the Illinois Constitution, and assert in Count V that the City is liable under the doctrine of promissory estoppel for damages. In each count, Plaintiffs request damages in excess of $70 million. Under the Local Governmental and Governmental Employees Tort Immunity Act, however, "[a] local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103. "'Injury' means death, injury to person, or damage to or loss of property," and it "includes any injury alleged in a civil action . . . based upon . . . the Constitution of the State of Illinois, and the statutes or common law of Illinois. . . ." *Id.* 10/1-204. Because Plaintiffs' claims arise from the enactment of the Amendment, the City cannot be held liable for any damages that flow from it. Thus, because the City is immune from damages (and that is the only relief that Plaintiffs seek), the Court should dismiss Counts IV-VI.

## VII. Plaintiffs' Due Process and Equal Protection Claims Under the Illinois Constitution Are Time Barred.

Because Plaintiffs' due process and equal protection claims in Count VI require this Court to review the validity of the Amendment under Illinois law, those claims must have been filed within 90 days of the Amendment's enactment. 65 ILCS 5/11-13-25(a) provides:

> Any decision by the corporate authorities of any municipality, home rule or non-home rule, in regard to any petition or application for a . . . rezoning, or other amendment to a zoning ordinance shall be subject to de novo judicial review as a

14

legislative decision, regardless of whether the process in relation thereto is considered administrative for other purposes. *Any action seeking the judicial review of such a decision shall be commenced no later than 90 days after the date of the decision.*

65 ILCS 5/11-13-25(a) (emphasis added). Because Plaintiffs' claims in Count VI require this Court to determine the validity of the Amendment, they fall squarely within the scope of section 5/11-13-25(a). In this instance, the City Council passed the Amendment on March 16, 2016, *see* Compl. ¶ 36, but Plaintiffs did not file their Complaint until nearly one year later on March 13, 2017. Plaintiffs therefore failed to bring their claims within the 90-day statute of limitations, and the due process and equal protection claims in Count VI should be dismissed as untimely.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss Plaintiffs' Complaint and grant the City such further relief as the Court deems just and appropriate.

Date: April 21, 2017                    Respectfully submitted,

                                        EDWARD N. SISKEL,
                                        Corporation Counsel of the City of Chicago

                                        By:     /s/William Macy Aguiar
                                                Senior Counsel

William Macy Aguiar (ARDC No. 6242406)
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7686

Attorney for Defendant City of Chicago