IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PITTSFIELD DEVELOPMENT, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 17-CV-1951 |
| CITY OF CHICAGO, | ) ) ) | Honorable Charles P. Kocoras Magistrate Judge Sidney I. Schenkier |
| Defendant. | ) | |

### DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

#### INTRODUCTION

Plaintiffs fail in their Memorandum of Law in Response to Defendant's Motion to Dismiss ("Response" or "Resp.") to demonstrate that they state any viable claims against the Amendment in their Complaint.[1]  With respect to their federal substantive due process claim, Plaintiffs do not challenge the City's recitation of the standards the Court must apply in determining whether Plaintiffs have stated a claim, but they incorrectly argue that the City attempts to hold Plaintiffs to a heightened pleading standard.  Moreover, Plaintiffs make no effort to refute the City's proffered rational bases for the Amendment, which is all that is required for the Court to uphold the Amendment.  The City contends that Plaintiffs' procedural due process claims fail because Plaintiffs' own allegations demonstrate that they had actual notice of the hearing at which the Committee considered the Amendment, but Plaintiffs ignore this argument in their Response.  Likewise, Plaintiffs do not demonstrate that the Complaint contains sufficient allegations that give rise to a class-of-one equal protection challenge to the

---

[1] Capitalized words and phrases herein shall have the same meaning as contained in the City's Memorandum in Support of Its Motion to Dismiss Plaintiffs' Complaint ("Memorandum" or "Mem.").

Amendment under the U.S. and Illinois Constitutions. Plaintiffs contend that they have properly alleged that the Amendment effects a taking of their property, but their allegations are entirely conclusory and insufficient to state a claim. Although Plaintiffs contend that the City is barred under the doctrine of promissory estoppel from denying them the right to locate a hotel in the Building, the letter on which their claim relies is not, on its face or under the law, an unambiguous promise, which is an essential element of any promissory estoppel claim. Finally, Plaintiffs fail in their attempt to save their due process and equal protection claims in Count VI from dismissal for not being filed within the appropriate statute of limitations because their parsing of 65 ILCS 5/11-13-25(a) is incorrect.

For these reasons and those stated in the City's Memorandum, Plaintiffs fail to state a claim, and their Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I.     Plaintiffs Have Not Stated A Federal Substantive Due Process Claim (Count I).

As explained by the City in its Memorandum, Plaintiffs' federal substantive due process claim fails as a matter of law because Plaintiffs, who allege only the deprivation of a property interest, do not properly plead "'either the inadequacy of state law remedies or an independent constitutional violation,'" *see Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003) (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323-26 (7th Cir. 1996)), or demonstrate that the Amendment fails rational basis review. *See* Mem. at 4-5. First, Plaintiffs' claims under the Illinois Constitution show that they have clear recourse in state court, and they have not pled a viable independent constitutional violation by the City. *See id*. Second, even if Plaintiffs could satisfy these requirements, the rational basis test, which governs this Court's review of the Amendment, precludes courtroom fact finding and evidentiary proceedings and requires the Court to uphold the Amendment if it can conceive of a rational basis for the City's legislative

action. *See id.* at 5-6. And because there are several conceivable rational bases supporting the Amendment, Plaintiffs' federal substantive due process claim fails. *See id.* at 6.

In their Response, Plaintiffs do not contend that the City incorrectly recites the standards the Court must apply in determining whether Plaintiffs have stated a substantive due process claim. They instead describe the facts of the cases cited by the City and state that "[i]n each of [those] cases, the plaintiffs failed to present a set of facts as egregious as those set forth by Plaintiffs in the Complaint." Resp. at 11. But the factual distinctions between the City's cases and the instant matter do not alter the legal requirements for bringing a substantive due process claim in the Seventh Circuit.[2] Moreover, Plaintiffs provide no support for their argument that "the City seeks to hold Plaintiffs to heightened pleading standards over and above those required under the rules and cases." Resp. at 10. To the contrary, the City argues that Plaintiffs' own allegations demonstrate that they cannot meet the Seventh Circuit's requirements for bringing a substantive due process claim based on a property interest, and Plaintiffs do not offer any argument showing that they have done so.

Plaintiffs also do not dispute that, even if they have met their preliminary burden, the Court uses rational basis review to determine the Amendment's constitutionality and that rational basis review is highly deferential to the legislative determination, precludes courtroom fact finding and evidentiary proceedings, and requires the Court uphold the Amendment if it can conceive of a rational basis for the City Council's action. *See* Mem. at 5-6. Instead, Plaintiffs assert that they have pleaded that the Amendment fails rational basis review because the City Council only enacted the Amendment after an unsuccessful prospective purchaser met with the

---

[2] Plaintiffs cite *Soundview Associates v. Town of Riverhead*, 725 F. Supp. 2d 320 (E.D.N.Y. 2010), ostensibly to offer the Court a standard for bringing a substantive due process claim different from that required by the Seventh Circuit. *See* Resp. at 12. Plaintiffs fail, however, to offer the Court any basis for it to abandon the Seventh Circuit's direction and instead adopt the decision of the Eastern District of New York.

Alderman to oppose the hotel use, the City acted with malice, and that the Amendment is not rationally related to a legitimate City interest. *See* Resp. at 12 n.7. Plaintiffs' attempts to show that the Amendment lacks a rational basis are insufficient, however. First, even if the Court were to consider Plaintiffs' allegation that the Alderman only proposed the Amendment to assist the prospective purchaser, *see* Resp. at 12 n.7, the decision to enact the Amendment rested with the full City Council, not with the Alderman. *See* MCC § 17-13-0307. Second, as explained in the City's Memorandum, Plaintiffs' allegation of "malice" is conclusory and not supported by any facts, *see* Mem. at 10, as is its claim that the Amendment is not rationally related to the City's legitimate interests, *see id.* at 12 n.7; Compl. ¶¶ 48, 63, 82. Their allegations are therefore insufficient to show that the Amendment lacks a conceivable rational basis. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (conclusory allegations that merely recite the elements of a claim are not entitled to a presumption of truth). Finally, and most importantly, the Amendment survives Plaintiffs' challenge if the Court can *conceive* of a rational basis for it, and although the City offers plausible rationale bases for its enactment, *see* Mem. at 6, Plaintiffs do not address—much less refute—any of the bases proffered by the City. Plaintiffs therefore fail to show that the Amendment lacks a rational basis, and for this reason, their federal substantive due process claim necessarily fails.

**II.        Plaintiffs Fail To Identify A Procedural Due Process Violation (Counts I and VI)**

Plaintiffs likewise fail to demonstrate in their Response that their federal procedural due process claim can survive. Citing *Indiana Land Co., LLC, v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004), the City explains in its Memorandum that the legislative process gave Plaintiffs all the process that was due because the Seventh Circuit has held that "[w]hen zoning decisions are confided to a legislative rather than a judicial body . . . the affected persons have no right to notice and an opportunity for hearing: no right, in other words, to procedural due

4

process." Mem. at 6-7. Plaintiffs claim that additional language contained in *Indiana Land* suggests that the Seventh Circuit would rule differently here because the Amendment affected only them and was not an ordinance of general application. *See* Resp. at 8. Their argument fails, however, because it does not address the City's reliance on *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994), in which the court rejected a property owner's due process claim that the city council did not properly consider the owner's application for a zoning amendment. After describing the procedures that are due in zoning matters as "minimal" and "scant," the Court explained that "state and local governments are not required to respect property owners' rights, and there is therefore no obligation to provide hearings to ascertain a protected core." *Id.* Thus, under *River Park*, when matters are reserved to the legislative process, that process alone is sufficient to meet constitutional requirements. *See id.* Because Plaintiffs do not dispute that the enactment of the Amendment rested squarely with the City Council, *see* Municipal Code of Chicago ("MCC"), § 17-13-0307, Plaintiffs received the process that was due to them by virtue of the legislative process.

Moreover, Plaintiffs allege to have received notice of the Committee's hearing by virtue of a public notice that was posted in the vicinity of the Building.[3] *See* Compl. ¶ 33 (Plaintiffs "*discovered* said *proposal* via a notice posted on a public light pole across from the Building") (emphasis added). *See also* MCC § 17-13-0306 (providing for posted notice of a zoning map amendment hearing). Thus, even if Plaintiffs were entitled to notice beyond the legislative proceeding, they received such notice through the public posting. Plaintiffs therefore had actual notice, and that fact, along with the lack of any claim that Plaintiffs were denied an opportunity to be heard, requires dismissal of their federal claim. *See Pro-Eco, Inc. v. Board of Comm'rs of*

---

[3] Moreover, Plaintiffs do not allege that the City failed to send them notice; they claim only that they did not receive it. *See* Compl., ¶ 33.

5

*Jay Cnty.*, 57 F.3d 505, 513 (7th Cir. 1995) (holding that the court need not address an appropriate form of notice because the plaintiff had actual notice of the hearing and did not allege the denial of an opportunity to be heard).

Plaintiffs' allegation that they had notice of the pending Amendment and their failure to allege that they were denied an opportunity to be heard also doom their state procedural due process claim. As the City argues in its Memorandum, *see* Mem. at 7-8, Illinois law holds that defects in notice may not be raised by parties who have actual notice of a meeting or hearing. *See Armour v. Mueller*, 36 Ill. App. 3d 23, 28 (5th Dist. 1976). *See also Stroick v. Vill. of West Dundee*, 319 Ill. App. 3d 468, 475 (1st Dist. 2001); *Kleidon v. City of Hickory Hills*, 120 Ill. App. 3d 1043, 1048 (1st Dist. 1984). Because Plaintiffs concede that they had actual notice of the Committee's meeting, their claim necessarily fails. Plaintiffs do not address or refute the City's argument that they had actual notice but instead contend that under *Passalino v. City of Zion*, 237 Ill. 2d 118 (2010), the City's notice was insufficient. Plaintiffs' reliance on *Passalino*, is misplaced, however, because in that case, the plaintiffs never received any notice of the zoning amendment affecting their property, *see id.* at 122-23, whereas here, Plaintiffs' own allegations demonstrate that they had notice of the public hearing due to the posted notice. Thus, Plaintiffs fail to show that they can maintain their state procedural due process claim when their own allegations show that they had actual notice of the Committee's hearing.

### III. Plaintiffs Fail To State An Equal Protection Violation (Counts I & VI).

Nothing Plaintiffs argue in their Response demonstrates that they have stated an equal protection claim under the U.S. or Illinois Constitutions.[4] Plaintiffs do not dispute that they have

---

[4] Plaintiffs assert that the City has not addressed its state-law spot zoning claim. *See* Resp. at 9. That is not correct: the City asked the Court to decline supplemental jurisdiction over any of Plaintiffs' state-law claims, including the spot zoning claim, because Plaintiffs failed to state a viable federal claim. *See* Mem. at 7 n.3. But, to the extent the Court exercises its jurisdiction, Plaintiffs' allegations fail to state a claim of unconstitutional spot zoning. "'Spot zoning' is a change in zoning applied only to a small

brought a "class of one" equal protection claim and that they must therefore allege that "(1) [they] have] been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward" the plaintiff. *Maulding Dev., LLC v. City of Springfield*, 453 F.3d 967 (7th Cir. 2006) (citing *Vill. of Willowbrook*, 528 U.S. at 564). With respect to the first element, Plaintiffs are only "similarly situated" to another they are "*prima facie* identical in all relevant respects." *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). As the City explains in its Memorandum, Plaintiffs have not pled any facts demonstrating that they have been treated differently than another who is *prima facie* similarly situated. *See* Mem. at 9-10. In their Response, Plaintiffs counter that they do make such an allegation in paragraphs 54 and 118 of their Complaint, *see* Resp. at 10, but those paragraphs state that the Amendment "only applies to the Building, and to no other properties," *see* Compl. ¶¶ 54, 118. Even if the Amendment does not apply to other property, that fact alone does not demonstrate that the Building is *prima facie* identical to any other property. Indeed, Plaintiffs cannot point to *any* allegations in their Complaint about any other property, let alone allegations that demonstrate that the Building was treated differently than properties that are prima facie identical to it. Plaintiffs have therefore not met their burden of pleading facts—and not conclusions—that give rise to a class-of-one equal

---

area, which it out of harmony with comprehensive planning for the good of the community; zoning that would violate a zoning pattern that is homogeneous, compact and uniform." *Bossman v. Village of Riverton*, 291 Ill. App. 3d 769, 774 (4th Dist. 1997). "[N]ot every reclassification of a single tract is void *ipso facto*; rather it must be determined whether such change is in harmony with a comprehensive plan for orderly utilization of property in the locality." *Id.* Here, Plaintiffs allege only that the Amendment affects the Building but no other property. Compl. ¶¶ 37, 54, 118. They fail to make any allegation that the Amendment makes the Building out of harmony with the zoning pattern with the surrounding area, and that failure requires dismissal of their spot zoning claim.

protection claim.⁵ *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiffs likewise fail in their Response to demonstrate that they have pled any facts supporting their claim the Amendment lacks a rational basis. Although Plaintiffs point to paragraph 48 of their Complaint, *see* Resp. at 9 n.6, that paragraph merely states that "[t]he subject down zoning at issue is not rationally related to any legitimate interests of the City," *see* Compl. ¶ 48. And paragraph 46, upon which Plaintiffs also rely, states only that "[the City] acted arbitrarily in enacting the [Amendment] which codified the Zoning Change." Compl. ¶ 46. As the City explains in its Memorandum, such allegations are merely statements of the elements of the claim and are therefore conclusory and insufficient to support their equal protection claim. *See Virnich*, 664 F.3d at 212. Finally, Plaintiffs also fail in their Response to cite to any allegations in the Complaint supporting their assertion that the Amendment results from an illegitimate animus toward them. They point only to their allegation in paragraph 47 of the Complaint that the City "acted with malice toward Plaintiffs in enacting" the Amendment, *see* Resp. at 9 n.6, but again, that bald and conclusory allegation is insufficient.⁶ *See* Mem. at 9-10. At bottom, Plaintiffs' allegations do not properly give rise to a class-of-one equal protection claim under either the U.S. or Illinois Constitution, and their claims should therefore be dismissed.

---

⁵ Contrary to Plaintiffs' argument, the City does not seek to require Plaintiffs to plead their evidence, *see* Resp. at 10, but instead to meet their burden of pleading facts—not conclusions—that properly give rise to a class-of-one equal protection claim.

⁶ Plaintiffs' attempt to distinguish *Naguib v. Illinois Dep't of Prof'l Regulation*, 986 F. Supp. 1082, 1092 (N.D. Ill. 1997), on the basis that the plaintiff in that case was *pro se* and filed a "rambling" complaint, *see* Resp. at 10, fails because that fact does not change the law applied by the court in *Naguib* and relied upon by the City.

## IV. Plaintiffs Fail To State a Federal Takings Claim.

Plaintiffs fail in their Response to demonstrate that they have stated a federal takings claim.[7] The City contends that Plaintiffs have alleged a regulatory taking of the Building because they do not allege a physical interference with the Building but instead claim that the Amendment denies them "*all* economically beneficial use of her property."[8] *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (quotation marks and alterations omitted). As explained in the City's Memorandum, Plaintiffs' allegations are conclusory and therefore insufficient to state a claim that the Amendment caused a regulatory taking. *See* Mem. at 8-10. For example, Plaintiffs allege that the Amendment does not allow any more residential units to be developed in the Building beyond those already in existence, *see* Compl. ¶ 34, but they provide no facts to support that conclusory allegation.[9] Plaintiffs argue in their Response that they are not required to plead evidence in their Complaint and that, based on *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995), their conclusory allegations are sufficient. But *Jackson* predates the Supreme Court's ruling in *Ashcroft*, 556 U.S. at 678, that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and that a complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the

---

[7] In their Response, Plaintiffs concede that their state claim for inverse condemnation fails because damages are unavailable as a matter of law. *See* Resp. at 14.

[8] Although Plaintiffs devote considerable attention to demonstrating that their claim is ripe for adjudication under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson County*, 473 U.S. 172 (1985), *see* Resp. at 5-6, the City did not raise ripeness as a grounds for dismissal of Plaintiffs' takings claim.

[9] Plaintiffs state that they may "sever their Properties into separate parcels for purposes of determining whether they have been denied all economically beneficial use." Resp. at 7. Here, Plaintiffs allege that Plaintiff Pittsfield Residential II, LLC ("Residential") owns floors 10-12 and that Residential did not vacate its tenants from those floors. Compl. ¶¶ 15, 23. Thus, Residential has no claim that a taking of its interest in the Building occurred due to the Amendment. Residential's claim should therefore be dismissed.

elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 570).[10] Here, Plaintiff merely concludes that the Amendment renders any further residential development impossible in the building, but it offers no facts to support that conclusion. As a result, Plaintiffs' allegations are nothing more than a mere recitation of the elements of a takings claim, which is insufficient. *See Vinrich*, 664 F.3d at 212.

The City further argues in its Memorandum that Plaintiffs do not state a claim that they have been denied *all* viable economic uses of the Building because MCC § 17-4-0207 sets forth permissible uses for property zoned DR-10 and that Plaintiffs do not allege that those uses are not economically viable. *See* Mem. at 12. Although Plaintiffs contend that there has been no "argument, let alone demonstration, that such additional uses are in fact economically beneficial," Resp. at 7-8, the City contends that it was Plaintiffs' burden—not the City's—to plead facts demonstrating that there are no economically beneficial uses of the Building. Plaintiffs do not even mention these alternative, permissible uses of the Building in their Complaint much less provide facts demonstrating that those uses are not economically viable. Instead, Plaintiffs offer only a conclusory allegation that the Amendment "requires [their interest in the Building] (other than floors 10-12 and certain retail space on the ground floor) to sit empty." Compl. ¶ 7. Because Plaintiffs entirely omit these alternative uses of the Building from their Complaint, they have not stated a claim that the Amendment caused a taking of their interest in the Building.

Finally, Plaintiffs attempt to state that there has been a taking of their interest in the permit that was issued to them by virtue of the Amendment. *See* Resp. at 6, 8. Although Plaintiffs plead that they obtained the permit and that the permit was effectively revoked by

---

[10] Although Plaintiff asserts that the City did not cite any legal authority to support its position, the City's Memorandum contains a "Legal Standard" section that explains the standards a court should employ in reviewing a complaint under Rule 12(b)(6). *See* Mem. at 3-4.

passage of the Amendment, *see* Compl. ¶¶ 28, 34, Plaintiffs never claim in their Complaint that the City has unconstitutionally taken their interest in the permit. For that reason, any such claim is not properly before the Court. To the extent such a claim is contained within the Complaint, Plaintiffs do not explain in their Response how their interest in the permit (which allows them to do the work they claim the Amendment now prohibits) is any different from their interest in the Building (which they claim has been taken because the Amendment precludes the work for which they have a permit). And the case cited by Plaintiffs, *G.T. Scott v. Greenville County*, 716 F.2d 1409, 1421 (4th Cir. 1983), does not support any such distinction because there, no permit had issued and the plaintiff claimed that the failure to issue the permit constituted a taking. That court did not determine whether a plaintiff could assert that a zoning ordinance could effect a taking of both the property and the permit to do the work that is no longer permissible. *See id.*

### V. Plaintiffs Fail To State A Claim For Promissory Estoppel (Count V).

Plaintiffs fail in their Response to demonstrate that they have stated a claim in Count V that the doctrine of promissory estoppel barred the City Council from enacting the Amendment. As explained in the City's Memorandum, *see* Mem. at 12-14, Plaintiffs must show the following to state a claim for promissory estoppel: "(1) an unambiguous promise was made; (2) the plaintiff relied on the promise; (3) the plaintiff's reliance on the promise was reasonable; and (4) the plaintiff suffered a detriment." *Chicago Limousine Serv., Inc., v. City of Chi.*, 335 Ill. App. 3d 489, 499 (1st Dist. 2002). Promissory estoppel "'against public bodies is generally not favored and is allowed in only rare and unusual circumstances,'" such as "'prevent[ing] fraud and injustice.'" *Id.* (quoting *Halleck v. Cnty. of Cook*, 264 Ill. App. 3d 887, 893 (1st Dist. 1994)).

Plaintiffs' claim of promissory estoppel, as stated in their Complaint, rests entirely on a

letter dated May 1, 2014 from Assistant Zoning Administrator Steven Valenziano.[11] *See* Compl. ¶¶ 103-04. Although Plaintiffs maintain that the letter constitutes an unambiguous promise by the City that "allows the court to infer a contract where none would otherwise exist," Resp. at 12, they fail to address—much less refute—the City's argument that the plain language of the letter demonstrates that it is not—and was never intended to be—an unambiguous promise to Plaintiffs that they will be able to construct a hotel in the Building.[12] At the outset, Plaintiffs requested an "advisory opinion" about whether the Zoning Ordinance would permit a hotel use in the Building, *see* Compl., Ex. A at p.2, and their use of the phrase "advisory opinion" itself demonstrates that Plaintiffs never sought a binding promise from the City. Moreover, Mr. Valenziano, in his May 1, 2014 response to Plaintiffs' request for an advisory opinion, stated that the Building is "*currently* zoned DX-16 [and that] [p]ursuant to section 17-04-0207-ll of the Chicago Zoning Ordinance a hotel is a permitted use . . . and therefore would be allowed to establish by-right" in the Building. Compl. Ex. A (emphasis added). The use of the word "currently" demonstrates that Mr. Valenziano was not making a promise that the Zoning Ordinance would always allow a hotel use in the Building but instead merely confirmed that the *current* zoning would allow for Plaintiffs' proposed use. Indeed, nothing in the letter states—or even suggests—that the City intended to bind itself from changing the zoning of the Building in

---

[11] Plaintiffs assert that the permit they received from the City also constitutes a promise from the City but that the City did not address the permit in its Memorandum. *See* Resp. at 12 & 13 n.8. But Plaintiffs do not claim in their Complaint that the permit they received from the City is a promise; they only allege that the May 1, 2014 letter from Mr. Valenziano was an unambiguous promise giving rise to their claim for promissory estoppel. *See* Compl. ¶¶ 102-07. Thus, whether Plaintiffs can assert that the issuance of a permit constitutes an unambiguous, binding promise from the City is not properly before the Court on Plaintiffs' Complaint.

[12] In fact, the Building, like all property in the City, is zoned by ordinance and is therefore publically available. Thus, Mr. Valenziano only confirmed to Plaintiffs what they already knew to be true.

the future.[13] Because Plaintiffs' request was for an "advisory opinion," and Mr. Valenziano responded based on the current zoning of the Building, there was no unambiguous promise.

Plaintiffs also fail in their Response to address the City's argument that Plaintiffs' reliance on the May 1, 2014 letter was not reasonable because under long-standing Illinois law, property owners do not enjoy the right to the continuation of any particular zoning classification and that owners purchase property with the knowledge that the zoning could change at any time. *See 1350 Lake Shore Assocs. v. Randall*, 401 Ill. App. 3d 96, 102 (1st Dist. 2010) ("A municipality has the right to amend its zoning ordinances . . . and one who purchases land is charged with the understanding that its zoning classification may be changed in the future.") (citations omitted). Because Plaintiffs are charged with the knowledge that the City Council could change the zoning for the Building at any time, they could not reasonably believe that a zoning change might not happen based on Mr. Valenziano's statement about the *current* zoning of the Building. Plaintiffs attempt to make their reliance appear "reasonable" by invoking the doctrine of vested rights, but that doctrine has no relevance here. *See* Resp. at 14 n.9. Under that doctrine, which is an exception to the general rule that a property owner has no vested right in the continuation of a zoning classification, Illinois courts recognize that "a property owner may acquire a vested right in a prior zoning classification where the owner sustained a significant change of position, by either making substantial expenditures or incurring substantial obligations, in good-faith reliance upon the probability of the issuance of a building permit."

---

[13] If adopted, Plaintiffs' argument that Mr. Valenziano's letter somehow bound the City Council from changing the zoning of the Building would effectively usurp the City Council's sole legislative authority to determine the zoning of property in the City and grant such authority to Mr. Valenziano. *See* MCC § 17-13-0307 (providing that "[t]he City Council is the final decision-making body on zoning map amendments"). And the fact that the City charges an administrative fee for rendering an advisory opinion does not evidence an intention by the City to be bound by its advisory opinion, and Plaintiffs cite no law supporting such a novel proposition.

*1350 Lake Shore Assocs.*, 401 Ill. App. 3d at 102. But what Plaintiffs are asserting here—promissory estoppel—is an entirely different claim from a vested rights claim and with different elements of proof. Moreover, Plaintiffs have not even brought a vested rights claim. Thus, Plaintiffs' reliance on the vested rights doctrine does nothing to save their claim.

**VI.	Counts V Fails Because Plaintiffs Cannot Obtain Damages Under Illinois Law.**

Although Plaintiffs concede in their Response that they are barred by the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-103, from recovering any damages for their inverse condemnation claim in Count IV and their state due process and equal protection claims in Count VI, they maintain that they are not barred from recovery for their promissory estoppel claim in Count V. *See* Resp. at 14. Plaintiffs are wrong. Section 10/2-103 states that a "[a] local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law," and section 10/1-204 defines "injury" as "death, injury to person, or damage to or loss of property," and it "includes any injury alleged in a civil action . . . based upon . . . the Constitution of the State of Illinois, and the statutes or common law of Illinois. . . ," *id.* 10/1-204. Plaintiffs' claim for promissory estoppel arises from the adoption of the Amendment, and it therefore falls squarely within the immunity from damages provided in section 10/2-103. Moreover, Plaintiffs have not cited any authority exempting promissory estoppel claims from the immunity provided by section 10/2-103.

**VII.	Plaintiffs' Due Process and Equal Protection Claims Under the Illinois Constitution Are Time Barred.**

As the City demonstrates in its Memorandum, Plaintiffs' state due process and equal protection claims in Count VI fail because they were not filed within the 90-day statute of limitations period set forth in 65 ILCS 5/11-13-25(a). *See* Mem. at 14-15. Plaintiffs contend,

14

however, that their claims were timely filed because the plain language of section 11-13-25(a) only governs decisions in regards to "any petition or application" for a rezoning and that there was no "petitioner" or "applicant" here.[14] *See* Resp. at 14 n.11. In paragraph 32 of their Complaint, however, Plaintiffs allege that the Amendment was sponsored by Alderman Brendan Reilly, *see* Compl. ¶ 32, and pursuant to MCC § 17-13-0303, the City Council may propose such amendments. Plaintiffs' argument therefore fails, and there can be no question that the statute of limitations set forth in section 11-13-25(a)—and not the general two year statute of limitations urged by Plaintiffs—governs. Plaintiffs' claims, which were filed outside that 90-day period, should therefore be dismissed.

## CONCLUSION

For the foregoing reasons and those in its Memorandum, the City respectfully requests that the Court dismiss Plaintiffs' Complaint and grant the City such further relief as the Court deems just and appropriate.

Date: June 22, 2017

Respectfully submitted,

EDWARD N. SISKEL,
Corporation Counsel of the City of Chicago

By: /s/William Macy Aguiar
     Senior Counsel

William Macy Aguiar (ARDC No. 6242406)
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7686

Attorney for Defendant City of Chicago

---

[14] Indeed, Plaintiffs' narrow reading of section 5/11-13-25(a) would frustrate the legislature's clear intent to place a 90-day time period on challenges to zoning amendments.