**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PITTSFIELD DEVELOPMENT, LLC,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 17-CV-1951** |
| | ) | **Honorable Charles P. Kocoras** |
| **CITY OF CHICAGO,** | ) | **Magistrate Judge Sidney I. Schenkier** |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**

## INTRODUCTION

Soon after the City passed the Ordinance rezoning the Pittsfield Building from DX-16 to DR-10, Plaintiffs sold their interests in the building for a considerable sum. The Amended Complaint alleges that while "[n]one of the sales price realized for the Properties by Plaintiffs was allocable to the Permit," all remaining interests "sold for a collective sales price of $20,800,000." (Dkt. 29 ¶¶ 59, 61.) Judicially noticeable documents in the public record establish that Plaintiffs received additional offers, including offers of $16,500,000 and $16,000,000, soon after retaining a broker to sell their properties. Even so, Hotel continues to claim that the Ordinance rendered its interests in the Pittsfield Building (floors 2-9) valueless, and indeed submits that it is entitled to $39,000,000 for the total loss of its property value and consequential damages. The Court should dismiss Hotel's total regulatory takings claim. Companies sought to purchase Plaintiffs' interests in the Pittsfield Building—including Hotel's floors—precisely due to the building's considerable economic potential under DR-10 zoning. Further, as Development advised a federal bankruptcy judge in a motion it filed, at least 60% of the value of the Pittsfield Building related to Hotel's and Development's floors of the building.

Hotel cannot fall back on a *Penn Central* takings claim. In its Memorandum Opinion, the Court squarely held that Plaintiffs cannot allege any such claim, as they complain only that the Ordinance prevented them from realizing the "economic upshot" of their property interests by preventing them from developing their properties into a hotel. Moreover, Hotel does not even add a *Penn Central* claim, and instead alleges the same factual assertions about the same Ordinance and parrots the same total regulatory takings language used in the original complaint. And even if Hotel did add a *Penn Central* claim, the claim would still fail.

Next, the *Lucas* takings theory cannot be applied to personal property interests like Hotel's building permit. Plaintiffs' Response brief cites numerous cases applying *Penn Central*

to personal property, but not one that so applies *Lucas*. This is unsurprising. The Supreme Court has cabined *Lucas*' special takings rule to "to the extraordinary circumstance when *no* productive or economically beneficial use of *land* is permitted." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg.'l Planning Agnecy*, 535 U.S. 302, 330 (2002) (emphasis added).

Finally, Plaintiff fails to state a substantive due process claim. Plaintiffs bear the burden of "showing" the inadequacy of state law remedies prior to advancing such a claim. Rather than meeting this burden, Plaintiffs allege the inadequacy of state law remedies in an entirely conclusory fashion while providing extensive allegations that Illinois' vested rights doctrine might have adequately remedied the quandary they find themselves in. But Plaintiffs' sale of their interests in the Pittsfield Building moots any lingering vested rights claims. The Court should therefore dismiss Plaintiffs' Amended Complaint in its entirety.

## ARGUMENT

### I.    Hotel Fails to State a Regulatory Taking of Its Floors in the Pittsfield Building.

As the Court recognized, the Pittsfield Building "is no mere vacant blight" and "is a desirably located property." (Dkt. 20, p. 17.) Businesses presented sizable offers to purchase Plaintiffs' interests in the Pittsfield Building—including Hotel's floors—precisely because they recognized the building's considerable economic potential. In their Response brief, Plaintiffs do not dispute that they received offers for their interests in the building. Rather, Plaintiffs improperly use their Response to further amend the Amended Complaint in two ways. First, the Response argues—in contradiction to the Amended Complaint's concession that the $20,800,000 sales price was allocable to *all* of Plaintiffs' interests in the building, aside only from Hotel's building permit—that the sales price did not include Hotel's floors at all. *Compare* (Dkt. 29 ¶¶ 59, 61), *with* Plfts' Response pp. 5-6. Second, the Response attempts to add a new *Penn Central*

2

takings claim not present in Plaintiffs' amended or original pleading. As Hotel fails to state a claim under either takings theory, the Court should dismiss Count I of the Amended Complaint.

### a. Hotel Fails to State a *Lucas* (Total) Regulatory Taking of Its Floors of the Pittsfield Building.

Plaintiffs' pleadings and court filings are rife with contradictions and ambiguities about the value of their respective property interests. In their original complaint, Plaintiffs contended that the Ordinance "effectively denie[d] Plaintiffs all economically viable uses for their properties" in the Pittsfield Building, (dkt. 1 ¶ 1); but in the Amended Complaint, Plaintiffs concede that Residential's interests in the Pittsfield Building had been operating at a profit and generating meaningful income, while Development was generating revenue from tenants. *E.g.* (dkt. 29 ¶ 60.). Likewise, in the Amended Complaint, Plaintiffs admit that their interests in the Pittsfield Building "sold for a collective sales price of $20,800,000," an amount partially allocable to Hotel's floors of the building, (dkt. 29 ¶¶ 59, 61); but in their Response brief, Plaintiffs state that Hotel's floors "had no independent value" whatsoever, (dkt. 42 p. 6).

The Court need not be confused about what portion of the purchase offers Plaintiffs received related to Hotel's floors of the Pittsfield Building. Fortunately, Development clarified this issue in its bankruptcy action. There, Development filed a motion in which it advised a federal bankruptcy judge that it had "identified a buyer that is ready, willing and able to offer $16 million for each of the subject parcels" and "that at least 60% of the $16 million purchase price, or approximately $9.6 million, is allocable to" Hotel and Development's floors of the building, while the balance is allocable to Residential's floors. (MTD at Ex. B ¶ 16). Thus, at least 60% of the value of the purchase offers Plaintiffs received for their interests in the Pittsfield Building, which included offers of $20,800,000, $16,500,000, and $16,000,000, was allocable to the floors of the building owned by Hotel and Development. Plaintiffs cannot advise this Court

that *none* of the sales offers reflected the value of Hotel's floors while advising a federal bankruptcy judge that the offers *mostly* reflect the value of Hotel's and Development's floors.

Events in the free market have overtaken any need for evaluating the plausibility of Plaintiffs' pleadings as to the value of Hotel's floors. While it is true that Hotel or a prospective purchaser would have needed to submit applications to develop Hotel's floors of the building permitted under DR-10 zoning, temporary delays, especially those associated with normal governmental processes such as the building permit process, do not result in takings. *See Tahoe-Sierra*, 535 U.S. at 334-35; *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 ("The right to improve property, of course, is subject to the reasonable exercise of state authority, including the enforcement of valid zoning and land-use restrictions."). The Court should therefore dismiss Hotel's *Lucas* takings claim set forth in Count I of the Amended Complaint.

### b.  Hotel Cannot and Does Not State a *Penn Central* Takings Claim.

The Amended Complaint cannot and does not state a *Penn Central* takings claim. The Court specifically addressed this matter in its Memorandum Opinion, where it agreed with the City that Plaintiffs did not allege any such claim. The Court reasoned as follows:

> The only other [takings] category arguably applicable, a *Penn Central* taking, requires an analysis of a "complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." *Palazzolo*, 533 U.S. at 617 (2001) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). However, "[a] regulatory restriction on use that does not entirely deprive an owner of property rights may not be a taking under *Penn Central*." *Horne v. Dep't of Agric.*, 135 S.Ct. 2419, 2429 (2015). Because Pittsfield does not allege that its rights in the Building or the Permit have been wholly deprived, only that the economic upshot of those rights has been nullified, we confined our analysis of the viability of Pittsfield's Complaint to its adequacy in alleging that the Downzoning Ordinance caused a complete deprivation of the properties' economically beneficial uses.

(Dkt. 20, pp. 16-17.)

4

The Amended Complaint sets forth the same takings challenge to the same Ordinance at issue in the original complaint, and depends on nearly identical factual assertions. *Compare* (dkt. 1), *with* (dkt. 29.) Notably, Plaintiffs' Response nowhere addresses the Court's concern that a regulatory restriction on use that does not entirely deprive an owner of property rights may not be a *Penn Central* taking. *See* Pltfs' Response pp. 8-10. Instead, Hotel submits only that the Ordinance nullified the economic upshot of its interests in the Pittsfield Building and permit.

The Amended Complaint not only cannot, but does not state a *Penn Central* claim. The Amended Complaint and Complaint state *total* regulatory takings claims, alleging as follows:

> Plaintiffs' claims arise out of the wrongful down zoning of real property owned by Plaintiffs that was initiated and enacted by the Defendant. The subject ordinance which selectively down zoned only the building in which properties owned by Plaintiffs were located (and no other buildings or properties) effectively denied Plaintiffs *all economically viable uses* for their affected properties and a related building permit to construct a hotel thereon."

(Dkt. 29 ¶ 1); (dkt. 1 ¶ 1) (emphasis added); *see also* (dkt 29 ¶ 71) ("The Downzoning Ordinance served to deny allowance of *any economically viable uses* for the Hotel Property.") (emphasis added), (dkt 29 ¶ 76) ("As a . . . result of the City's wrongful acts as complained of herein, Hotel has sustained significant injuries and damages in excess of $39,000,000.00. Said injuries and damages include, but are not limited to loss of *all economically beneficial uses* of the Hotel Property as affected by the Downzoning Ordinance, . . .") (emphasis added), (dkt. 29 ¶ 94.) The Court should not entertain Hotel's attempt to amend its takings claim through a Response brief. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984 ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").[1]

---

[1] Plaintiff also cannot raise a new *Penn Central* claim prior to seeking leave of the Court. Following the Court's Memorandum Opinion, Plaintiffs' counsel advised the Court that Plaintiffs had sold their real property in the Pittsfield Building. The City moved the Court for an order directing Plaintiffs to amend their pleading to conform it to (1) the Court's Memorandum Opinion, which dismissed various claims and permitted others to survive; and (2) the new facts relating to Plaintiffs' sale of their interests in the Pittsfield Building. (Dkt. 25.) The Court granted

Finally, even if Hotel raised a *Penn Central* claim, the claim would still fail. Courts analyze a *Penn Central* claim by evaluating "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with investment-backed expectations; and (3) the character of the government action." *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 225 (1986). The "economic impact" and "character" factors so overwhelmingly favor the City such that Hotel could not succeed on this claim.

First, as to the "economic impact" factor, following the Ordinance, Plaintiffs sold their interests in the Pittsfield Building for $20,800,000, and *at least* 60% of this value was allocable to Hotel and Development's property interests. There is no allegation that Hotel, as opposed to Residential or Development, was drawn into bankruptcy due to the Ordinance. Rather, Hotel complains only that the Ordinance prevented "the economic upshot" of its interests in the Pittsfield Building by prohibiting it from developing its property into a hotel. The Ordinance cannot result in a *Penn Central* taking solely because it may have prevented the most beneficial uses of Hotel's property. *See Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592 (1962) ("It is an oft-repeated truism that every regulation necessarily speaks as a prohibition. If this [zoning] ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional."). Thus, the Court must regard the Ordinance as permitting Hotel not only to profit from the sale of its floors, but to obtain a reasonable return on its investment.

Second, as to the "character" element, the Ordinance imposed only a minor downzoning from DX-16 to DR-10, a zoning classification which permits a wide array of economically viable property uses. Absent extraordinary circumstances, laws imposing minor zoning reclassifications

---

Plaintiff leave to amend on these limited grounds, (dkt. 27), and on January 16, 2018, Plaintiffs filed their Amended Complaint to comply with the Court's order, (dkt. 29.)

do not result in *Penn Central* takings. *See* Erwin Chemerinsky, Constitutional Law: Principles and Policies (5th ed. 2015), pp. 679-80 (discussing the seminal takings challenges to restrictions on the use of property through zoning laws, and concluding that the Supreme Court is only willing to find that such laws result in regulatory takings "if the law prevents virtually all economically viable uses of the property, as was the situation in *Lucas*").

Finally, as to the "investment-backed expectations" factor, although Hotel alleges that it made investments to turn its property into a hotel, "'[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law,' . . . [and] government may execute laws or programs that adversely affect recognized economic values." *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (citation omitted). A property that sells for millions following a minor rezoning that prevents only the most beneficial use of a property therefore does not implicate *Penn Central*.

As Hotel cannot and does not state a *Penn Central* takings claim, the Court should disregard its attempt to add such a claim for the first time through its Response brief.

## II. There Can Be No Total Regulatory (*Lucas*) Taking of Hotel's Building Permit.

The Supreme Court has limited *Lucas* takings "to the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg.'l Planning Agency*, 535 U.S. 302, 330 (2002) (emphasis added); *see also Hawkeye Commodity Promotions, Inc.* ("Thus, it appears that *Lucas* protects real property only."); *Parkridge Investors, Ltd. P'ship v. Farmers Home Admin.*, 13 F.3d 1192, 1199 (8th Cir. 1994) (accord); *Philip Morris, Inc. v. Reilly*, 312 F.3d 24, 35 (1st Cir. 2002) ("*Lucas* dealt with real, not personal, property, and the Court cautioned that the value of personal property could be wiped out without triggering the strictures of the Takings Clause."); *Unity Real Estate Co. v.*

*Hudson*, 178 F.3d 649, 675 (3d Cir. 1999) ("Therefore, the 'total destruction' language of cases concerning real property should not be mechanically applied to the situation at bar."). Thus, *Lucas* cannot apply to Hotel's alleged personal property interest in its building permit.

Plaintiffs' Response does not dispute that Hotel's building permit is personal property, and indeed the Amended Complaint alleges that it is personalty. *See*, *e.g.*, (dkt. 29 ¶ 15) (excluding Hotel's building permit from the real property that has allegedly been taken by the City). Rather, Plaintiffs seek to rebut the City's argument that there can be no *Lucas* taking of Hotel's building permit by citing case law in which courts have applied *Penn Central*'s takings analysis to personal property interests. Plaintiffs' counterargument misses the point. First, the Court has already held that Plaintiffs fail to state any *Penn Central* claim. *See* Sec. __, *supra*. Second, *Penn Central* can apply to personal property; but *Lucas* cannot. *Lucas* has been cabined to very specific circumstances. It provides plaintiffs with a categorical takings theory that applies only to real property. Thus, unsurprisingly, Plaintiffs have failed to cite even one case in which *Lucas* has been applied to personal property, let alone a case in the Seventh Circuit. The Court should dismiss Count II of the Amended Complaint, which, as the Court held in its Memorandum Opinion, sets forth a *Lucas* (total regulatory takings) challenge to the Ordinance based on Hotel's personal property interest in its building permit.

### III.    Any Vested Rights Claims Have Been Rendered Moot.

A party that prevails under a vested rights claim receives only the right to "complete the construction and use of the premises for the purposes originally authorized." *Image Media Advertising, Inc. v. City of Chicago, et al.*, Case No. 17-CV-4513, Dkt. 66 (N.D. Ill. December 7, 2017) (J. Feinerman). The City has argued that Plaintiffs' sale of their interests in the Pittsfield Building moots any such claim. Plaintiffs may no longer develop a property they do not own into a hotel. Plaintiffs go a step further than the City, and state in their Response that they do not even

allege any vested rights claim. (Plfts' Response at 14) ("Hotel asserts claims for a taking of the Hotel Property and the Permit in Counts I and II of the Amended Complaint – not for 'development.'"). Thus, the Court should dismiss any lingering vested rights claims.

## IV.    Plaintiffs Fail to State a Substantive Due Process Claim.

The Court's Memorandum Opinion permitted Plaintiffs' substantive due process claims to survive upon finding that Hotel sufficiently alleged total regulatory takings challenges. (Dkt. 20, p. 24.) As discussed herein and in the City's Motion to Reconsider, however, Hotel's regulatory takings challenges fail. The Court should now in turn dismiss Plaintiffs' substantive due process challenges, as there is no independent constitutional violation and Plaintiffs fail to show the inadequacy of state law remedies. *See Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996). Plaintiffs bear the burden of "showing" that state law remedies are inadequate. Yet rather than making such a showing, the Amended Complaint alleges the inadequacy of state remedies in an entirely conclusory fashion. (*E.g.* dkt. 29 ¶ 123.) The Seventh Circuit has consistently held that such allegations are facially inadequate. *E.g. LeBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) ("The amended complaint alleges only that 'Labella has no adequate state law remedy available to it to address this unlawful conduct by the Village and Williams.' We have held that 'such a conclusory allegation is insufficient.'").

Even if Plaintiffs pleaded more than a conclusory allegation, they have pled themselves out of court with extensive allegations concerning their state law vested rights to develop the property. All of Plaintiffs' alleged damages, without exception, relate to their alleged inability to proceed under prior authorization to develop their interests in the Pittsfield Building into a hotel following the Ordinance. *See*, *e.g.*, (dkt. 29 ¶ 76.) Illinois provides an adequate state law remedy to address such complaints through its vested rights doctrine. Hotel could have advanced a vested rights claim, which might have permitted it to proceed under prior authorization to

9

develop their properties into a hotel notwithstanding the Ordinance. They did not. They instead opted to sell their interests in the Pittsfield Building for $20,800,000. The Court should therefore dismiss Plaintiffs' substantive due process claims.[2]

### V. Hotel Lacks Standing to Bring Its Count I *Lucas* Challenge.

Hotel has suffered no injury to a "legally protected interest" that would permit it to advance a *Lucas* challenge. Even where a property owner suffers a diminution in value, such an alleged injury is not "legally protected interest" under *Lucas*, which provides a remedy only to property owners who have suffered a *total* deprivation of all economic value of their real property. *Tahoe-Sierra*, 535 U.S. at 330. Thus, Hotel lacks standing to set forth its *Lucas* challenge in Count I of its Amended Complaint.

### CONCLUSION

**WHEREFORE** the City of Chicago respectfully requests that the Court enter an order dismissing Plaintiffs' Amended Complaint in full and granting any other relief that the Court deems just and appropriate.

Date:   April 25, 2018

Respectfully submitted,

ANDREW S. MINE
JORDAN A. ROSEN
City of Chicago, Department of Law
Constitutional and Commercial Litig. Div.
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7220 / 744-9018

EDWARD N. SISKEL,
Corporation Counsel for the City of Chicago

By:     /s/ Jordan A. Rosen
          Assistant Corporation Counsel

*Attorneys for Defendant*

---

[2] Plaintiffs attempt to satisfy their pleading burden in their Response brief by stating that they could not proceed on a vested rights claim due to "the hostile political environment." (Plfts' Response at 14.) They also state that a reputable lending institution would not provide financing to Hotel following the zoning change. (*Id.*) But not only are these allegations absent from Plaintiffs' pleading, they do not "show" the inadequacy of a vested rights claim. If Hotel succeeded on its vested rights claim to develop its interests into a hotel, it could have ultimately received financing. Further, there is no showing that Hotel even tried to secure financing or that it considered additional tactics, such as moving for a preliminary injunction in a vested rights action to quickly secure financing.