# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PITTSFIELD DEVELOPMENT, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 17-CV-1951 |
| | ) | Honorable Charles P. Kocoras |
| CITY OF CHICAGO, | ) ) | Magistrate Judge Sidney I. Schenkier |
| Defendant. | ) | |

## DEFENDANT CITY OF CHICAGO'S REPLY
## IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION

**ARGUMENT**

I. **Illinois Law Does Not Recognize Hotel's Purported Interest in Its Building Permit for Purposes of the Takings Clause.**

In its November 27, 2017 Memorandum Opinion, the Court held that Illinois' vested rights doctrine serves as a predicate for the recognition of a building permit as a constitutionally recognized property interest for purposes of the Takings Clause. (Dkt. 20 at 14-15.) The Court relied on a particular doctrine—Illinois' vested rights doctrine—as support for its holding that Hotel's interest in its building permit might potentially underlie a *Lucas* takings claim. (*Id.*) The City respectfully requests that the Court reconsider its opinion on this point. As the City has argued, the vested rights doctrine does not recognize a property interest in a building permit for purposes of the Takings Clause. (*See* Motion for Reconsideration, pp. 3-5.)

Rather, the relief provided by Illinois' vested rights doctrine has been characterized as follows:

> [W]here there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and *he may complete the construction and use of the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classification*.

*People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove*, 16 Ill.2d 183, 191 (1959) (emphasis added); *see also Fifteen Fifty North State Bldg. Corp. v. City of Chicago*, 15 Ill.2d 408, 416 (1958) (first recognizing Illinois' vested rights doctrine and holding that the doctrine recognizes the right to "complete the construction and use of the premises for the purposes originally authorized.").

The recently-decided *Image Media Advertising, Inc. v. City of Chicago, et al.*, Case No. 17-CV-4513, dkt. 66 (N.D. Ill. Dec. 7, 2017) (J. Feinerman) ("*Image Media*") further

underscores that the vested rights doctrine cannot serve as a basis for recognizing a building permit as a property interest in a takings analysis. The *Image Media* court conducted a comprehensive review of case law involving Illinois' vested rights doctrine and held that every vested rights doctrine of which it was aware identifies a writ of mandamus in the form of an order permitting the property owner to continue with the construction or use allowed by the revoked permit or ordinance as the remedy that the doctrine provides. *Id.* at 11-12 (collecting and summarizing Illinois case law involving the vested rights doctrine). Following its review of the relevant case law, the *Image Media* court concluded that no Illinois case suggests that a plaintiff may seek compensation through a takings claim based on a vested property right in a permit. *Id.* As the court concluded, this makes sense, because "a takings claim is intended to compensate with money an individual whose property rights are impacted by government action," while "the 'vested property right' doctrine provides injunctive relief actually allowing the plaintiff to use the property as he or she wishes, overriding the government's effort to halt such use. *Id.* at 12.

      Plaintiffs' Response provides scarce analysis of the City's arguments centered on *Image Media* or of the opinion itself. Indeed, Plaintiffs appear to recognize the problems associated with connecting Hotel's building permit to Illinois' vested rights doctrine, and therefore begin their Response by arguing that the City's discussion of the vested rights doctrine is misplaced, as the term "vested rights" has a "significantly broader reach" than "just the vested rights doctrine." (Plfts' Response, p. 3.) This may be so, but the Court specifically held that the vested rights doctrine—and not some other vested rights principle—serves as a basis for recognizing Hotel's building permit as a property interest under the Takings Clause. Plaintiffs nowhere elaborate how Illinois law surrounding "vested rights," in even the term's broadest sense, somehow provides an additional basis for recognizing Hotel's permit for purposes of a takings analysis.

2

Plaintiffs also cannot divert attention from the *Image Media* opinion by contending that in *Image Media*, unlike here, no permit had actually issued. (*Id.* at 4.) The *Image Media* did not find this factual distinction significant and, rather, stated, "With two exceptions, the cases cited by Image Media do not suggest that even the *revocation* of a license or permit already possessed by the plaintiff could ground a taking claim." *Image Media* at 9. The Court distinguished the two opinions cited by Image Media, which included *Boonstra v. City of Chicago*, 574 N.E.2d 689 (1st Dist. 1991) and the Court's Memorandum Opinion. As the Court noted in *Image Media*, a careful analysis of *Boonstra* reveals that Hotel's purported interest in its building permit would not be recognized for purposes of the Takings Clause. In *Boonstra*, the First District addressed the impact of an ordinance retroactively revoking the assignability of taxicab licenses. *Id.* But as the *Image Media* court observed, *Boonstra*'s holding was premised on the court's finding that "for more than 20 years, the City of Chicago . . . fostered and participated in the assignment of the taxicab licenses." *Id.* at 694-95. The City's practice, the *Boonstra* court found, rendered taxicab licenses "more than just mere personal permits granted by a governmental body to a person to pursue some occupation or to carry on some business," and imbued them with "the essence of property in that they were securely and durably owned and marketable." *Id.*

In contrast, here the City has not engaged in any longstanding practice of fostering and participating in the assignment of building permits, or otherwise suggesting that building permits are securable and durable property interests. To the contrary, the MCC severely limits the dimensions of any privileges related to building permits, and repeatedly provides that building permits lack the crucial indicia of traditionally recognized property rights. *See American Pelagic Fishing Co., L.P. v. U.S.*, 379 F.3d 1363, 1374 (holding that a permit that lacks crucial indicia of a property right such as transferability, coupled with the government's retention of the right to

3

suspend, revoke, or modify the permit, "compels the conclusion that the permit bestowed a revocable license, instead of a property right.") (quoting *Conti v. U.S.*, 291 F.3d 1334, 1341-42 (Fed. Cir. 2002) (holding that a sword fishing permit is not a property interest under the Takings Clause)); *Conti*, 291 F.3d at 1341 ("The rights to sell, assign, or otherwise transfer are traditional hallmarks of property") (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435-36 (1982). Purported interests that are generally easily revocable, contingent, and subordinate to the power of the government are not recognized as property interests under the Takings Clause. *See*, *e.g.*, *Dames & Moore v. Regan*, 453 U.S. 654, 674 n.6, 689 (1981).

Building permits are created by the City, and building permit applicants do not consent to the limitations imposed by the MCC. Rather, the City retains control to impose its own limitations, and the limits imposed by the MCC provide that building permits lack crucial indicia of traditionally protected property interests. As Hotel's building permit states on its face, the permit "must be displayed on job site at all times," MCC § 13-32-010, "is NOT transferable," MCC § 13-32-032, and "may be revoked for violation of . . . all other applicable laws." (*See* dkt. 29, Ex. 2.) The MCC's general provisions governing building permits also provide that a building permit becomes "void" if "the operations called for by such permit shall not be begun within six months after the date thereof. . . .", and applicants must often request an "extended permit" which is only "valid for six months following the date of expiration of the original permit." MCC § 13-32-110. The MCC provides for additional provisions that establish that the City's course of conduct with respect to building permits is strikingly different from the course of conduct the First District described in *Boonstra* with respect to the City's treatment of taxicab licenses. (Motion for Reconsideration, pp. 5-6); *see also* MCC §§ 13-32, *et seq.* ("Building Permits").

The City has not engaged in a practice that suggests that building permits are securely and durably an applicant's; building permits lack crucial indicia of property interests; and local law imposes severe constraints on such interests. Further, the relief afforded by Illinois' vested rights doctrine does not imbue a building permit with characteristics associated with traditional property interests, such as transferability or the ability to be monetized in damages or sold as a chose in action. Rather, the vested rights doctrine, which has a "narrow scope," grants only a limited stick in a bundle of rights, and thereby cuts against viewing a permit as a property right recognized under the Takings Clause. The City respectfully requests that the Court reconsider its opinion that Illinois law recognizes building permits for purposes of the Takings Clause.

**II.       Plaintiffs' Passing References to Cases Recognizing Unrelated Property Interests Do Not Establish that Hotel's Building Permit is Recognized Under the Takings Clause.**

Plaintiffs next argue that a building permit is a constitutionally recognized property interest for purposes of the Takings Clause because "[t]here is case law in both Illinois and outside the district and circuit which find that certain permits and licenses are constitutionally recognized property interests." (Plfts' Response, p. 2.) They support this point by drawing the Court's attention to cases finding protected property interests in licenses to operate taxicabs, the right to practice dentistry, use of a hotel room, and other interests. (*Id.* pp. 4-5.) But Plaintiffs rely solely on passing references to the cases recognizing such interests. They provide no analysis of the reasoning behind any of the cases cited, let alone how a court's recognition of an interest in, for example, "using a hotel" lends any support to their claim that a *building permit* is a constitutionally recognized property interest. (*Id.*) Indeed, Plaintiffs do not even assert that any of the cases they rely on centered on the Takings Clause. *See Pittman v. Chi. Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995) ("'Property' as used in [the Takings] clause is defined much

5

more narrowly than in the due process clauses."); *see also Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cnty.*, 57 F.3d 505, 513 (7th Cir. 1995) ("The Due Process Clause . . . recognizes a wider range of interests as property than does the Takings Clause.").

In fact, to the extent that case law evaluating whether permits and licenses are constitutionally recognized property interests are relevant to *this* case, the case law largely cuts against Plaintiffs' claims. *See*, *e.g.*, *Am. Pelagic Fishing Co., L.P. v. United States*, 49 Fed. Cl. 36, 46 (2001) ("Licenses or permits are traditionally treated as not protected by the Takings Clause because they are created by the government and can be cancelled by the government and normally are not transferable."), *rev'd on other grounds*, 379 F.3d 1363 (Fed. Cir. 2004); *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1197 (10th Cir. 1999) (holding that a grazing permit is not property under the Takings Clause); *Jesso v. Podgorski*, 2010 WL 5157361, at *4 (N.D. Ill. Dec. 14, 2010) (holding that a liquor license is not considered private property within the meaning of the Takings Clause); *United States v. Fuller*, 409 U.S. 488, 493 (1973) (grazing permits are not compensable property interests); *Alves v. U.S.*, 133 F.3d 1454, 1457 (Fed. Cir. 1988) (accord).

Thus, contrary to Plaintiffs' characterization of the case law surrounding permits and licenses, it is anomalous for courts to hold that such interests are recognized under the Takings Clause.

### III. There Can Be No *Lucas* Taking of Hotel's Building Permit.

The Supreme Court has limited *Lucas* takings "to the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg.'l Planning Agnecy*, 535 U.S. 302, 330 (2002) (emphasis added); *see also Hawkeye Commodity Promotions, Inc.* ("Thus, it appears that *Lucas* protects real property

only."); *Parkridge Investors, Ltd. P'ship v. Farmers Home Admin.*, 13 F.3d 1192, 1199 (8th Cir. 1994) (accord); *Philip Morris, Inc. v. Reilly*, 312 F.3d 24, 35 (1st Cir. 2002) ("*Lucas* dealt with real, not personal, property, and the Court cautioned that the value of personal property could be wiped out without triggering the strictures of the Takings Clause."); *Unity Real Estate Co. v. Hudson*, 178 F.3d 649, 675 (3d Cir. 1999) ("Therefore, the 'total destruction' language of cases concerning real property should not be mechanically applied to the situation at bar."). Thus, *Lucas* cannot apply to Hotel's alleged personal property interest in its building permit.

The City refers the Court to Section II of its Reply in Support of Its Motion to Dismiss, which further develops this argument and is incorporated herein by reference.

## CONCLUSION

**WHEREFORE**, the City respectfully requests that the Court grant its motion for reconsideration and revise the Court's November 28, 2017 opinion and order to grant the City's Motion to Dismiss Plaintiffs' takings claims, or in the alternative to vacate the pertinent portion of the November 28 opinion and to address the viability of Plaintiff Hotel's takings claim purportedly predicated on the building permit without regard to that portion of the prior opinion.

Date:  May 4, 2018                                          Respectfully submitted,

ANDREW S. MINE                                              EDWARD N. SISKEL,
JORDAN A. ROSEN                                             Corporation Counsel for the City of Chicago
City of Chicago, Department of Law
Constitutional and Commercial Litig. Div.    By:    /s/ Jordan A. Rosen
30 North LaSalle Street, Suite 1230                        Assistant Corporation Counsel
Chicago, Illinois 60602
(312) 744-7220 / 744-9018

*Attorneys for Defendant*